399 So.2d 100 (1981)
Lee M. DERRICKSON, Appellant,
v.
STATE of Florida, Appellee.
No. TT-444.
District Court of Appeal of Florida, First District.
May 29, 1981.
Michael J. Minerva, Public Defender; and David J. Busch and Louis G. Carres, Asst. Public Defenders, for appellant.
Jim Smith, Atty. Gen., and David Gauldin, Asst. Atty. Gen., for appellee.
PER CURIAM.
On appeal is the denial of a motion to suppress evidence obtained from a small *101 airplane. Appellant plead nolo contendere to the charge of importation of cannabis in excess of 100 pounds, reserving the right to appeal the denial of the motion to suppress. We affirm.
On December 5, 1977, weather conditions near the Gainesville Municipal Airport were such that anyone wishing to land an airplane there was required to contact the control tower and obtain landing instructions before coming within five miles of the airport. On this evening, however, an airplane landed without communicating with the control tower and obtaining clearance or approval from the air controller. The air controller attempted unsuccessfully to make contact with the pilot of the airplane after it had landed and taxied to the north ramp of the airport, known as the Sopwith Camel. The air controller then notified the Gainesville Police Department of the incident.
Three police officers arrived and examined the exterior of the airplane with a flashlight. Each officer claimed to have seen, through the window of the airplane, a white plastic garbage-type bag with a small tear in it, through which a green or brown leafy substance was visible. The officers testified they believed the material to be marijuana. The three officers secured the area and called in two other officers, one of whom was a member of the Gainesville Police Department's narcotics and organized crime unit. Upon the arrival of the other two officers, a warrantless search of the unoccupied airplane was conducted and over 100 pounds of marijuana were seized. At a later date, appellant, the pilot of the airplane, was arrested and charged.
Appellant argues that the search was unreasonable because no exigent circumstances existed and the plain view exception to the warrant requirement was not applicable, since "plain view alone is never enough to justify the warrantless seizure of evidence." Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We do not agree that the search was conducted based on plain view alone.
In Coolidge, the Supreme Court was concerned with distinguishing cases in which "plain view" has some legal significance from other cases, since "in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure" (emphasis in original). 403 U.S. at 465, 91 S.Ct. at 2037. Plain view alone cannot justify a warrantless seizure of evidence; there must be some prior justification for the officers' presence at the location where the observation takes place. This prior justification is not limited to the existence of exigent circumstances:
What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification  whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused  and permits the warrantless seizure. (emphasis added)
403 U.S. at 466, 91 S.Ct. at 2038.
The officers who viewed what they believed to be marijuana through the airplane window were legitimately present at the scene; they had been called to investigate the surreptitious landing of the airplane. The initial investigation and examination of the exterior of the airplane, which had been landed without clearance and left at the public airport, did not constitute a search directed against appellant; "a search is generally accepted to be an inspection or examination of places closed from public or general view... ." State v. Ashby, 245 So.2d 225 (Fla. 1971). In this case, the prior justification for the officers' presence also indicates that the requirement of inadvertence was satisfied; the officers who responded to the call from the airport to investigate the surreptitious landing did not anticipate the discovery of this evidence, so that a warrant could have been procured beforehand; nor did they know in advance *102 the location of evidence and intend to seize it. 403 U.S. at 470, 91 S.Ct. at 2040.
The basic requirements of the plain view exception to the warrant requirement have been clearly set forth in Pomerantz v. State, 372 So.2d 104, 110 (Fla. 3rd DCA 1979) cert. denied 386 So.2d 642 (Fla. 1980):
In a long line of cases, the Florida and federal courts have held that it is not a search for the police to discover evidence in plain sight. The warrantless seizure of such evidence is constitutionally permissible providing three requirements are met: (1) the police must observe the evidence in plain sight without the benefit of a search [i.e., without invading one's reasonable expectation or privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation, and (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime... . Such plain sight seizures have been treated either as an exception to the search warrant requirement rule, Coolidge v. New Hampshire, 403 U.S. 443, 464-473, 91 S.Ct. 2022 [2037-42], 29 L.Ed.2d 564 (1971), or as being entirely beyond the scope of Fourth Amendment protection. Hornblower v. State, 351 So.2d 716, 718 (Fla. 1977). In any event, a search warrant is not required in order for the police to conduct such a constitutional seizure.
We have seen that the observation took place without the benefit of a search and that the officers had a legal right to be where they were when the observation was made. Given the stated belief of each of the officers that the substance observed was marijuana, following the surreptitious landing of the plane, the third criterion, probable cause to believe the evidence they were confronted with was contraband, was also satisfied.
Additional support for the conclusion that the seizure of evidence was reasonable is found in Albo v. State, 379 So.2d 648 (Fla. 1980) citing Harris v. United States, 390 U.S. 234, 237, 88 S.Ct. 992, 994, 19 L.Ed.2d 1067 (1968): "Seizable items which inadvertently come into view of a law enforcement officer who has a right to be where he is may be used in the prosecution of the crime to which they are related."[1] The Albo court continued:
[O]bservation of an object by a police officer in plain view is not a search when the officer has a legal right to be in the position to have that view. Such object may be seized by the officer and introduced *103 into evidence... . When contraband is the object spotted in plain view, it may be immediately seized because of its nature... . (citations omitted)
The denial of the motion to suppress evidence is AFFIRMED.
McCORD and LARRY G. SMITH, JJ., and OWEN, WILLIAM C., Jr., (Retired) Associate Judge, concur.
NOTES
[1] It might be argued that this statement does not necessarily solve the problem of whether evidence is "seizable" when a closed vehicle must be opened in order to effect the seizure. In State v. Ashby, 245 So.2d 225 (Fla. 1971), however, police officers made a warrantless seizure from a garage, of stolen items which had been observed in plain view through an existing crack in the garage door. The seizure was found to be reasonable. Obviously, once the officers made the observation, the garage door had to be opened in order to seize the items.

In addition, an airplane is potentially highly mobile, making this situation somewhat analogous to cases in which warrantless seizures have been justified based on the automobile exception to the warrant requirement. If the officers were justified in immobilizing the airplane, and denying its use to anyone until a warrant was secured, there is little difference, in terms of practical consequences, between that immobilization and the search which was conducted after the airplane had been secured Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The Chambers Court said:
Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which is the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
The search in Chambers did not take place immediately after the automobile was immobilized; it occurred after the auto had been secured at the police station. See Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).