GROSS, J.
Eduardo Ruiz appeals his conviction of attempted first degree murder and his sentence of twenty years in prison, which was an upward departure from the sentencing guidelines. We affirm.
Ruiz challenges the seizure of his 1988 Honda Civic. Prior to the seizure, the police had probable cause to seize the car, since a shotgun had been fired from it on Interstate 95, injuring the driver of another vehicle. An officer went to Ruiz’s residence and was invited inside by Ruiz’s mother, who indicated that her son would be back shortly to drive her somewhere in his car. Ruiz’s mother showed the officer the Honda Civic, which was abutting an alley behind the residence, parked in a driveway. From outward appearances, it was not clear whether the driveway was connected to the residence. The officer arranged for the car to be towed to a storage facility, where it was sealed. He later obtained a search warrant for the Honda, where the police found a live shotgun shell and other shotgun components.
Because he was invited onto the property by Ruiz’s mother, the officer was lawfully on the premises when he saw the vehicle used in the shooting. Also, the car was clearly visible from the public alley. Using Fourth Amendment terminology, the vehicle was in open view. See Ensor v. State, 403 So.2d 349, 352 (Fla.1981). Ruiz had no reasonable expectation of privacy in the area from which the car was seized. Because no constitutionally protected area was involved, the resulting seizure had “no fourth amendment ramifications.” Id.
The area was not part of the curtilage of the house. See United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The area was neither covered, nor fenced, nor enclosed; it was fully visible and accessible to any member of the general public in the alley. See State v. Clarke, 242 So.2d 791, 793-94 (Fla. 4th DCA 1970), disapproved on other grounds, State v. Bamber, 630 So.2d 1048, 1054-55 (Fla.1994); Barnes v. State, 691 So.2d 1161 (Fla. 1st DCA 1997). The area was not used for “those intimate activities associated with domestic life and the priva-cies of the home.” Dunn, 480 U.S. at 301 n. 4, 107 S.Ct. 1134. Under these circumstances, the seizure of the vehicle was proper. See California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); Ensor, 403 So.2d at 352; State v. Loomis, 436 So.2d 1103 (Fla. 4th DCA 1983); Lightfoot v. State, 356 So.2d 331 (Fla. 4th DCA 1978); Barnes, 691 So.2d at 1161; Masters v. State, 453 So.2d 183 (Fla. 3d DCA 1984).
Ruiz also challenges his twenty year sentence for attempted first degree murder, which was an upward departure from the sentencing guidelines. Section 921.0016(3)®, Florida Statutes (1997), provides that a sentencing judge may depart from the guidelines if the “offense created *583 a substantial risk of death or great bodily harm to many persons.” [1] The evidence in this case established that Ruiz was a principal in the attempted murder. At a gas station prior to the shooting, Ruiz made statements indicating his complicity in a plan to shoot the victim. After the victim drove off, Ruiz drove his car in a chase that lasted for nearly four and one-half miles. Due to the crowded interstate, Ruiz had to weave in and out of traffic to catch up to the victim. Ruiz pulled his Honda alongside the victim’s car on the interstate. A passenger in Ruiz’s car fired a shotgun at the victim. Shotgun pellets struck the victim’s head and shoulder.
The discharge of a shotgun on a busy interstate highway is a circumstance that created a substantial risk of death or great bodily harm to many persons within the meaning of section 921.0016(3)©. See Brown v. State, 667 So.2d 901 (Fla. 4th DCA 1996).
Ruiz relies on Marshall v. State, 600 So.2d 474 (Fla. 3d DCA 1992), to support his contention that since he “was not the perpetrator who shot the victim ... the departure sentence as to him was invalid.” However, Ruiz misreads Marshall. The defendant’s departure sentence in Marshall was vacated, but only because the defendant was acquitted of the aggravated battery charge that was the basis for the departure. Unlike the defendant in Marshall, Ruiz was convicted of attempted first degree murder, the basis for his upward departure sentence.
Ruiz relies on Clark v. State, 701 So.2d 912 (Fla. 4th DCA 1997), to argue that when no evidence is presented that a defendant personally used a weapon in committing a crime, it is error for the trial court to enhance the defendant’s sentence based on a co-defendant’s use of a firearm. However, Clark, as well as the cases upon which Clark relies, dealt with section 775.087(1), Florida Statutes (1997), which provides for re-classifying felonies to a higher level of felony, thus raising the maximum potential sentence. One ground for upward reclassification under section 775.087(1) is that a defendant carry, display, use, threaten, or attempt to use any weapon or firearm during the commission of a felony. The statutory language requires that a defendant actually use a firearm in the commission of a felony for it to be applicable; use attributable to a defendant under the theory of principals is insufficient to trigger the operation of the statute. See § 777.011, Fla. Stat. (1997).
Clark did not construe section 921.0016(3)®, which provides for an upward departure from the sentencing guidelines for the crime as charged. See Williams v. State, 622 So.2d 456 (Fla.1993); State v. Rodriguez, 602 So.2d 1270 (Fla.1992). No language in that subsection precludes it from being applicable to a defendant who is guilty of a crime as a principal in the first degree.
AFFIRMED.
KLEIN and HAZOURI, JJ„ concur.

. Section 921.0016, Florida Statutes has been repealed effective October 1, 1998, but remains in effect with respect to crimes committed before October 1, 1998. Here, the crime was committed on April 13, 1997. The repealed provisions shall remain in the Florida Statutes for 10 years from October 1, 1998. See Ch. 97-194, § 1, at 3674, Laws of Fla.